UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRYSTAL SPRINGS UPLAND SCHOOL,<br><br>Plaintiff,<br><br>v.<br><br>FIELDTURF USA, INC., et al.,<br><br>Defendants. | Case No.16-cv-01335-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS; SETTING INITIAL CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 11 |

Before the Court is the partial motion to dismiss filed by Defendants Fieldturf USA, Inc., ("FUSA"), Fieldturf, Inc., and Fieldturf Tarkett SAS (together, "Defendants"). Dkt. No. 11 ("Mot."). Defendants move to dismiss Plaintiff Crystal Springs Uplands School's ("Plaintiff") negligent misrepresentation and breach of warranty claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiff has filed an opposition, Dkt. No. 12 ("Opp."), and Defendants have replied, Dkt. No. 13 ("Reply").

Under Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-6, the Court finds that this matter is suitable for disposition without oral argument. For the reasons set forth below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' partial motion to dismiss. Plaintiff's negligent misrepresentation claim is **DISMISSED WITHOUT PREJUDICE** because, as pled, it is barred by the economic loss rule. But Plaintiff is **GRANTED LEAVE TO AMEND** that claim within 30 days of the date of this Order.

**I.    BACKGROUND**

**A.    Factual Allegations**

This is a dispute about an allegedly defective turf field. Plaintiff is a private middle school and high school located in Hillsborough, California. Dkt. No. 1 ("Compl.") ¶ 3. In 2008, Plaintiff

1    began investigating the possibility of installing a synthetic turf soccer field at the school's campus.
2    *Id.* ¶ 9. As part of that investigation, Plaintiff studied the various artificial turf products available
3    on the market and the suppliers of those products, one of which was Defendants. *Id.* ¶ 10.

4          Defendants' marketing materials represented that its turf field products were made from a
5    patented monofilament fiber, sold under the trade name Fieldturf Duraspine, which was available
6    only to Defendants. *Id.* ¶ 11. Defendants further represented that: (1) purchasers would be able to
7    "amortize the life of [the] field on a 10+ year basis"; (2) "although FieldTurf sometimes cost [sic]
8    more to install, it is actually cheaper over the long term. Sometimes almost $1,000,000 cheaper!";
9    (3) the fields have a "Turf Life [of] 8-10 years"; (4) Duraspine "provides the industry's strongest
10   wear resistance and superior pile recovery. It's the most durable fiber[.]"; (5) "FieldTurf has
11   proven to be the most durable system in the world"; (6) "All of FieldTurf's components are made
12   from the highest quality materials"; (7) Duraspine is "renowned for its durability and resistance to
13   matting"; (8) "FieldTurf has proven to be the most durable and longest-lasting synthetic turf
14   system in the marketplace"; (9) "FieldTurf may be priced slightly higher but it costs significantly
15   less"; and (10) FieldTurf installs "10 pounds of infill per square foot [of field] (7 pounds of silica
16   sand plus 3 pounds of cryogenic rubber) [which is] vital to safety, durability and longevity." *Id.*
17   Defendants also offered Plaintiff a third-party insured, eight-year manufacturer's warranty on a
18   turf field because Defendants had "inspect[ed] all aspects of the product from fiber to finishing."
19   *Id.* ¶ 12.

20         In reliance on these representations, Plaintiff contracted with FUSA in or around July 2009
21   to have FUSA furnish and install a two-inch thick artificial grass in-filled playing surface for use
22   as a soccer field at Plaintiff's campus in exchange for a total payment from Plaintiff of $281,760.
23   *Id.* ¶ 13. Plaintiff's payment later increased to $293,760 through the issuance of a change order.
24   *Id.* The turf field was to be made of the Fieldturf Duraspine monofilament fibers that Defendants
25   had described in their marketing materials. *Id.* ¶ 14. FUSA finished installing the turf field in or
26   around September 2009 and, at that time, provided Plaintiff with an eight-year warranty for repair
27   or replacement of all, or any portion, of the field "defective in material or workmanship, resulting
28   in premature wear." *Id.* ¶ 15.

On March 1, 2011, Defendants filed a federal lawsuit against third-party TenCate, the exclusive supplier of the monofilament fiber used by Defendants in their turf products. *Id.* ¶ 17. Defendants alleged that TenCate had changed the formula and the process by which it made the fiber, manufacturing it without an "adequate amount of ultraviolet stabilizers required to prevent loss of tensile strength," thereby rendering it "less durable" and "increasing the likelihood of premature fiber degradation under certain conditions." *Id.* Defendants also alleged that during 2009, at the same time or before Plaintiff contracted with FUSA, they had received a significant number of customer complaints, reporting "excessive thinning and fading of the fibers – especially along white and yellow lines, logos and other field areas composed of colored yarn" and that "large areas of the turf had degraded dramatically." *Id.* ¶ 18a. In other instances, customers had complained that the "fiber in one tufted row of a field was failing, while fiber of the same color in an immediately adjacent tufted row was not failing." *Id.* ¶ 18b. Defendants asserted that "[t]he existence of variable degradation rates in fiber exposed to the same environmental and wear conditions suggested . . . that TenCate had quality control issues[.]" *Id.* But Plaintiff alleges that Defendants were actually receiving complaints about their Duraspine fields failing before then and had commenced their own investigation as early as 2006. *Id.* ¶ 19. The lawsuit against TenCate went to trial and Defendants' chief executive officer testified that, at the same time they installed Plaintiff's turf field, they considered the Duraspine fiber to be defective, but were installing new fields anyway without telling their customers. *Id.* ¶ 20 & Ex. A (CEO trial testimony excerpts).

On this basis, Plaintiff alleges that the representations and warranties that Defendants made in their marketing materials and the warranty were knowingly false, or at least reckless. *Id.* ¶ 16. Furthermore, Defendants never disclosed to Plaintiff that its products were defective. *Id.* ¶ 21. In early 2015, Plaintiff noticed that its turf field was failing despite the fact that the field got substantially less use than many of Defendants' other artificial turf fields. *Id.* ¶ 23. When Plaintiff complained to Defendants, they attempted to perform routine maintenance work on the field and refused to replace it. *Id.* ¶ 24. The field has continued to deteriorate. *Id.* ¶ 25.

### B. Procedural History

Plaintiff filed this action on March 18, 2016, asserting claims for breach of warranty, fraud, negligent misrepresentation, and unfair competition. *Id.* ¶¶ 27-55. Plaintiff seeks damages,

3

pre-judgment interest, punitive and exemplary damages, restitution, and attorneys' fees and costs. *Id.* Plaintiffs also seek a permanent injunction requiring that Defendants respond to any warranty claim made on any field installed before July 1, 2011, with a full replacement of that field at no cost to the customer, but Plaintiff does not assert any class claims. *See id.*

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted).

//

4

### III. DISCUSSION

#### A. Breach of Warranty

Defendants contend that Plaintiff has failed to state a claim for breach of express warranty because it has not alleged that the warranty was set forth in a written instrument. Mot. at 4-10.

To state a claim for breach of express warranty under California law, a plaintiff must prove that the seller: (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff. Cal. Com. Code § 2313(1); *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986). "It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." Cal. Com. Code § 2313(2). Additionally, California Commercial Code § 2201 provides that "a contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker."

Defendants are correct that a contract for the sale of goods over $500 is unenforceable unless there is a sufficient writing indicating the existence of the contract. But a plaintiff need not allege the existence of a written instrument in its complaint in order to state a claim for breach of warranty. Instead, the statute of frauds may be raised by a defendant as an affirmative defense in its answer. *See* Fed. R. Civ. Pro. 8(c)(1) ("In *responding* to a pleading, a party must affirmatively state any avoidance or affirmative defense, including . . . [the] statute of frauds") (emphasis added). The California Court of Appeal has explained that "[w]here a claim is unenforceable[,] the burden is on the defense to demonstrate unenforceability . . . . [C]laims of unenforceability must be raised by affirmative defense, such as a claim a contract is barred by the statute of frauds[.]" *Ladd v. Warner Bros. Entm't*, 184 Cal. App. 4th 1298, 1309, n.8 (2010) (quoting *Walton v. City of Red Bluff*, 2 Cal. App. 4th 117, 131 (1991)). In short, a plaintiff is not required

to plead that its claim is not barred by the statute of frauds. Of course, a plaintiff can allege facts that show that its claim is barred on its face, *see Weisbuch*, 119 F.3d at 783 n.1, but that is not the case here, as Plaintiff has not alleged any facts implying that the warranty Defendants provided was oral.[1]

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's breach of express warranty claim for failing to allege the existence of a written instrument.[2] The Court need not and does not reach the question of whether the contract was predominantly for the sale of goods.

## B.  Negligent Misrepresentation

Defendants next contend that Plaintiff cannot state a claim for negligent misrepresentation because: (1) the parties are "merchants" and therefore cannot seek tort remedies in connection with a breach of contract; and (2) the economic loss rule bars the claim because Plaintiff did not allege it suffered harm to anything other than the allegedly defective product itself. Mot. at 9-14.

### 1.  Tort Liability Between Merchants

Assuming (without deciding) that the contract involved here is one for the sale of goods governed by the California Commercial Code, Defendants' argument that Plaintiff is a "merchant" fails. *See* Mot. at 6-7, 9. The California Commercial Code defines a "merchant" as:

> a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skills peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

Cal. Com. Code § 2104(1). Plaintiff alleges that it is a private middle school and high school that investigated whether it should buy a single artificial turf field and then purchased one. Compl. ¶¶ 3, 9-10, 13. Nothing about those facts in any way plausibly suggests that Plaintiff is a merchant

---

[1] Defendant's citation to *Newfield v. Insurance Co. of the West*, 156 Cal. App. 3d 440, 446-47 (1984) *abrogated on other grounds by Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 672-75 & n.19 (1988), is therefore distinguishable. In that case, the plaintiff expressly alleged that the employment contract purportedly subject to the statute of frauds was oral. *Id.* at 446.

[2] The Court does not address Defendant's argument that Plaintiff's claim also fails because the separate warranty agreement lacked consideration. *See* Reply at 2-3. New arguments are not permitted in reply. *See Eberle v. City of Anaheim*, 901 F.2d 814, 817-18 (9th Cir. 1995) (issues not raised in opening brief may not properly be raised for the first time in reply brief).

1    that "deals in" turf fields.  Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's

2    negligent misrepresentation claim on the ground that the parties were acting as merchants.

           2.      <u>Economic Loss Rule</u>

4    Defendants' final argument is that Plaintiff's negligent misrepresentation claim is barred

5    by the economic loss rule.  Mot. at 7-10.  Because Plaintiff does not allege any injury apart from

6    economic injury to the product itself, Defendant argues that it cannot seek a tort remedy.

7    The California Supreme Court generally has explained the economic loss rule as follows:

> Damages available under strict products liability do not include economic loss, which includes 'damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits-without any claim of personal injury or damages to other property' . . . [T]he economic loss rule allows a plaintiff to recover in strict products liability in tort when a product defect causes damage to 'other property,' that is, property other than the product itself.  The law of contractual warranty governs damage to the product itself.

13    *Jimenez v. Superior Court*, 29 Cal. 4th 473, 482-83 (2002) (quoting *Sacramento Reg'l Transit*

14    *Dist. v. Grumman Flxible*, 158 Cal. App. 3d 289, 294 (1984)).  In other words, if a plaintiff alleges

15    a strict products liability claim seeking only economic damages, i.e., damage to the allegedly

16    defective product itself, then the claim is generally barred by the economic loss rule.  The

17    economic loss rule thus "prevents the law of contract and the law of tort from dissolving one into

18    the other."  *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (quotation marks

19    and citation omitted).

20    But there are contract disputes in which tort liability is appropriate.  "Tort damages have

21    been permitted in contract cases where a breach of duty directly causes physical injury; for breach

22    of the covenant of good faith and fair dealing in insurance contracts; for wrongful discharge in

23    violation of fundamental public policy; or where the contract was fraudulently induced."  *Erlich v.*

24    *Menezes*, 21 Cal. 4th 543, 551-52 (1999) (internal citations omitted).  "In each of these cases, the

25    duty that gives rise to tort liability is either completely independent of the contract or arises from

26    conduct that is both intentional and intended to harm."  *Id.* (citation omitted).  In addition, the

27    California Supreme Court has held that the economic loss rule does not bar a parallel tort claim

28    where (1) a defendant makes "affirmative misrepresentations on which a plaintiff relies"; and (2)

those misrepresentations "expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Robinson Helicopter*, 34 Cal. 4th at 993. The guiding principle is that "[a] breach of contract remedy assumes that the parties to a contract can negotiate the risk of loss occasioned by a breach . . . [but] a party to a contract cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that contract." *Id.* at 992-93.

Applying this framework, it is clear that if Plaintiff had asserted a claim for strict products liability and sought only economic damages, then the claim would be barred by the economic loss rule. But the more difficult question involves Plaintiff's claim for negligent misrepresentation. Neither the California Supreme Court nor the Ninth Circuit has decisively addressed the issue.[3]

To state a claim for negligent misrepresentation under California law, a plaintiff must allege: (1) the misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance on the misrepresentation; and (5) resulting damage. *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007). "In contrast to fraud, negligent misrepresentation does not require knowledge of falsity." *Id.* Instead, "[a] person who makes false statements, honestly believing that they are true, may still be liable for negligent misrepresentation if he or she has no reasonable grounds for such belief." *Id.* (internal quotations omitted). But negligent misrepresentation is still considered "a species of the tort of deceit." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 407 (1992); *see also* Cal. Civ. Code § 1710(2).

District courts in this circuit have applied *Robinson Helicopter* on a case-by-case basis to decide whether negligent misrepresentation claims are barred by the economic loss rule. *See, e.g.*, *Westport Ins. Corp. v. Vasquez, Estrada and Conway LLP*, No. 15-cv-05789, 2016 WL 1394360, at \*\*5-7 (N.D. Cal. Apr. 8, 2016) (holding that tort claims including negligent misrepresentation

---

[3] The Ninth Circuit addressed this issue in two unpublished memorandum dispositions that reached seemingly opposite conclusions. One case held that a negligent misrepresentation claim was not barred because it was alleged that "one party ha[d] lied to the other." *Hannibal Pictures, Inc. v. Sonja Prods. LLC*, 432 Fed. Appx. 700, 701 (9th Cir. 2011). A second case held that California law barred plaintiff's fraud, negligence, and negligent misrepresentation claims ". . . because, even if fraud were shown, there [was] no showing that . . . [plaintiff] was exposed to 'personal damages' beyond economic losses." *Astrium S.A.S. v. TRW, Inc.*, 197 Fed. Appx. 575, 577 (9th Cir. 2006). The Court finds the approach in *Astrium* to be persuasive given the two-prong test laid out in *Robinson*. *See* 34 Cal. 4th at 993.

were barred by the economic loss rule because the alleged tortious conduct was not separate from the breach of contract, the exposure to personal damages to the plaintiff flowed only from the loss of payment owed under the contract, it was not a products liability case, and the alleged conduct was not so "clearly violative of business practices" that tort liability was warranted by social policy); *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, No. 2:12-cv-02182, 2016 WL 829210, at \*\*6-9 (E.D. Cal. Mar. 3, 2016) (dismissing negligent misrepresentation claim because case did not involve a products liability claim and the plaintiff did not allege any personal liability flowing from the breach); *Nada Pac. Corp. v. Power Eng'g & Mfg., Ltd.*, 73 F. Supp. 3d 1206, 1224-25 (N.D. Cal. 2014) (dismissing negligent misrepresentation claim because the plaintiff did not plead that it relied on any affirmative misrepresentations or that it was exposed to personal damages); *Tasion Comm'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803, 2013 WL 4530470, at \*\*9-11 (N.D. Cal. Aug. 26, 2013) (dismissing negligent misrepresentation claim because it was based solely on marketing materials that touted the benefits of the product); *JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012) (noting the absence of independent personal liability); *but see Bret Harte Union*, 2016 WL 3519294, at \*\*3-6 (collecting cases and holding that claims for negligent misrepresentation that allege contract formation was tortiously induced are per se permissible).

The clear pattern that emerges from these cases is that a negligent misrepresentation claim paralleling a contract claim that prays only for economic damages will be barred by the economic loss rule unless the plaintiff alleges both that the defendant made an affirmative misrepresentation, and that the defendant's misrepresentation exposed the plaintiff to independent personal liability. *See Robinson Helicopter*, 34 Cal. 4th at 993. Here, Plaintiff has alleged that Defendants made affirmative misrepresentations about the effectiveness of their product, but has not alleged that their reliance on those representations opened them up to independent personal liability. For that reason, the Court finds that the economic loss rule bars Plaintiff's claim for negligent misrepresentation as pled.

Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's claim for negligent misrepresentation as barred by the economic loss rule. Plaintiff is granted leave to amend the

9

complaint to allege facts sufficient to show that Defendants' affirmative misrepresentations exposed it to independent personal liability.

## IV. CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' partial motion to dismiss. Plaintiff's negligent misrepresentation claim is **DISMISSED WITHOUT PREJUDICE** because, as pled, it is barred by the economic loss rule. Plaintiff is **GRANTED LEAVE TO AMEND** its claim within 30 days. Additionally, the Court **SETS** an initial case management conference for December 20, 2016, at 2:00pm to discuss scheduling in this case. The parties are directed to file the joint case management statement required by Local Rule 16-9(a) by December 13, 2016.

**IT IS SO ORDERED.**

Dated: 11/7/2016

HAYWOOD S. GILLIAM, JR.
United States District Judge